In the United States District Court
Northern District of Texas
Dallas Division

| | | |
|---|---|---|
| Cynthia Rogers | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| Able Moving, LLC d/b/a | § | |
| Able Machinery Movers, LLC | § | |
| | § | |
| | § | |
| Defendant | § | |

## Plaintiff's Original Complaint

Plaintiff Cynthia Rogers ("Rogers" or "Plaintiff") files this Original Complaint against Able Moving LLC d/b/a Able Machinery Movers LLC ("Able" or "Defendant") and shows:

## Parties

1.   Plaintiff Cynthia Rogers is an individual citizen of Texas and a resident of Tarrant County, Texas.

2.   Defendant Able Moving, LLC d/b/a Able Machinery Movers LLC is a foreign limited liability company doing business in Texas. It may be served by serving its registered agent David Krieger, 600 Westport Parkway, Grapevine, Texas 76051-6739.

## Venue and Jurisdiction

3.   Venue is proper in Northern District of Texas because the events establishing the

claims occurred in the Northern District of Texas.

4.    This Court has federal jurisdiction over the claims asserted under the ADEA, 29 U.S.C. § 621 *et. seq.,* Americans with Disability Act claims, 42 U.S.C. §12117(a), FFCRA, and supplemental jurisdiction of Rogers's Texas Labor Code Ch. 21 claims.

## Summary of Claim

5.    Able discriminated against Rogers because of her age and disabilities. Able retaliated against Rogers after she engaged in protected activity by objecting to being called ageist remarks such as "old lady" by Able employees. Able retaliated against Rogers for seeking and using reasonable accommodations for her disabilities. Able discriminated against Rogers by denying her the reasonable accommodation of being allowed to work from home due to her disabilities. Able retaliated against Rogers to taking Emergency Paid Sick Leave under the Families First Coronavirus Response Act ("FFCRA") after she contracted Covid-19. Rogers sues for age and disability discrimination and retaliation under the ADEA, ADA and Texas Labor Code Chapter 21.  Rogers also sues for FFCRA retaliation.

## Factual Background

6.    Able hired Rogers over 26 years ago. Rogers held a variety of positions during her 26 years at Able. In the recent years, Able had Rogers working as the only Sales Coordinator for it. In 2020, Rogers was age 66.

7.    Able employees made ageist and offensive remarks to Rogers, such as calling her "old lady."  Rogers objected to being referred to by such an ageist and offensive term.

8.    Able employees, including David Krieger and Chris Hughes, would make statements to Rogers like "you sure are moving slow today, but then you are getting pretty old."  If Rogers mentioned that she had forgotten something, Able employees would say things such as "well, this is what happens when you get old. Your memory goes first."  On Rogers' birthday, she was told, "you sure are getting up there."  These comments were offensive to Rogers.

9.    Over the years, Rogers has suffered from several serious health conditions and disabilities. Rogers suffers from Chronic Obstructive Pulmonary Disease (COPD), diabetes, and rheumatoid arthritis. Rogers also has a history of heart disease.

10.   In 2020, Able hired three new Sales Coordinators. In February 2020, Able hired Kathy Rodgers as a new Sales Coordinator for its Houston office. She was referred to Able by Rogers. Rogers trained Kathy Rodgers for the position in Houston as the new Sales Coordinator. When Kathy Rodgers transferred to Austin, Able hired a new Sales Coordinator for Houston.

11.   In September 2020, Able also hired another Sales Coordinator for the Grapevine office where Rogers worked. Rogers trained these new Sales Coordinators. This new Sales Coordinator was Melissa Cass.

12.   Of the three Sales Coordinators hired, two were younger than Rogers and one (Kathy Rodgers) was age 67.

13.   None of the three new Sales Coordinators have disabilities.

14.   In March 2020, during the beginning of the COVID-19 pandemic, Rogers and other Able employees who could work remotely did so. That was the protocol until mid to late April 2020. Rogers was able to successfully perform her job duties while working remotely.

15.   In April 2020, Able wanted its employees to return to the office. Rogers obtained a note from her physician about her need to quarantine and requesting that Rogers be allowed to work from home due to her being a high risk patient. Rogers requested the accommodation of working from home. Able granted Rogers a short remote work accommodation of working home. However, Able required Rogers to return to the office in May 2020.

16.   In 2020, Rogers suffered serious health problems. Due to serious problems with spinal stenosis, Rogers had to have a either series of epidural injections spread out over several weeks or surgery. Because of her health, surgery was not a good option and Rogers decided to have the epidural injections. Spinal stenosis is a narrowing of the spine in the lumbar region. It is painful and substantially interferes with Rogers ability to walk long distances or to sit for extended periods of time without getting up or moving around.

17.   Rogers requested that Able allow her the accommodation of working from home while she got the treatment for her spinal stenosis. Able refused to grant Rogers this reasonable accommodation.

18.   Instead, Able told Rogers she needed to take short-term disability. Rogers did so. Rogers applied for short-term disability and  took a medical leave of absence from Able from late July 2020 until September 4, 2020 for her spine condition after being denied the reasonable accommodation of being allowed to work remotely.

19.   In September 2020, Able hired Melissa Cass to be a Sales Coordinator in the Grapevine office. Cass started her work for Able on September 20, 2020. Rogers had returned to the Grapevine office from her medical leave and  began to train Cass in the Sales Coordinator duties.

20.   Unfortunately, Rogers contracted COVID-19 and tested positive for it on September 25, 2020. Within several days of Rogers' diagnosis, several other office employees at Able also tested positive for COVID-19.

21.   Rogers  again had to take medical leave due to COVID beginning on September 25, 2020. Because Rogers had so many underlying health conditions, her case of COVID-19 was serious. It took her quite a bit of time to recover from it. As her health improved, Rogers again asked to work remotely as an accommodation but was denied. Instead, Rogers was again told to take short-term disability.

22.   Rogers received pay for some of her leave under the FFCRA Emergency Paid Sick Leave provision  and was out on medical leave until she  returned to work on December 28, 2020.

23.   While out on her leave, Rogers got telephone calls and text messages from Able employees asking questions. The reason for this is that Cass, the new Grapevine Sales Coordinator, was new and still learning her job duties. Able employees called Rogers at home to ask questions so Rogers could tell them how to do something or direct them to the answer.

24.   In December 2020, Rogers again asked if she could work remotely, but was told that she could not.

25.   Rogers' physician released her to return to work part-time on December 16, 2020. Rogers provided that doctor's release to David Krieger and Ben Miller. Miller told Rogers that working part-time was not an option and that Rogers should return to work full-time on December 28, 2020.

26.   Rogers did so. Rogers went back to work on December 28, 2020 and worked between eight to nine hours that date.

27.   Able fired Rogers on January 4, 2021. Able told Rogers it determined that it no longer needed all four Sales Coordinators.

28.   Able fired Rogers and kept the three new Sales Coordinators, all of whom had less than one year of experience as a Sales Coordinator for Able.

29. Able retained the two Sales Coordinators who were younger than Rogers, including the younger Sales Coordinator working in the Grapevine office for Able who had only been working for Able for approximately four months when Rogers got fired.

30. The Sales Coordinators retained by Able had no disabilities.

31. Upon information and belief, Able hired another Sales Coordinator for the Grapevine office within months after terminating Rogers.

## Causes of Action

### Age Discrimination under ADEA

32.   Rogers incorporates the preceding paragraphs as if restated.

33.   Able is an employer as defined by the ADEA, 29 U.S.C. § 630.

34.   Rogers, age 66 when she was terminated,  is an employee covered by the ADEA. 29 U.S.C. § 630(f).

35.   Able discriminated against Rogers in the terms and conditions of her employment.

36.   Able, through its employees, made ageist comments about Rogers directly to Rogers and to other employees. Able employees called Rogers "old lady."  Able employees made comments to Rogers such as "you sure are moving slow today, but then you are getting pretty old" or "well, that is what happens when you get old. Your memory goes first."  On Rogers' birthday, she was told, "you sure are getting on up there."

37.   Able subjected Rogers to disparate treatment by refusing to allow her to work remotely during periods of 2020. Upon information and belief, Able had allowed a younger employee to work remotely in 2019 when that employee required back surgery.

38.   Able subjected Rogers to disparate treatment by firing her. However, Able did not fire the younger Sales Coordinator in the Grapevine office with less experience with  Able than Rogers and who had been trained by Rogers.

39.   Upon information and belief, Able hired another Sales Coordinator for the Grapevine office shortly after Rogers was fired who is younger than Rogers.

40.   Able discriminated against Rogers and terminated Rogers because of her age in violation of the ADEA. 29 U.S.C. § 623(a).

41.   Able's violations of the ADEA damaged Rogers. Rogers seeks to recover all legal and equitable relief to which she is entitled because of the discriminatory actions of  Able in violation of the ADEA.

42.   Rogers seeks to recover her back pay and the value of her lost employment benefits, front pay, liquidated damages, the equitable remedy of reinstatement, prejudgment and post-judgment interest and her reasonable attorney's fees and costs.

### Age Discrimination under Texas Labor Code Chapter 21

43.   Rogers incorporates the previous paragraphs as if restated.

44.   Able is an employer for Texas Labor Code § 21.002.

45.   Rogers, age 66 when she was terminated, is protected from age discrimination under Texas Labor Code Chapter 21.

46.   Able discriminated against Rogers in the terms and conditions of her employment.

47.   Able, through its employees, made ageist comments about Rogers directly to Rogers and to other employees. Able employees called Rogers "old lady." Able employees made comments to Rogers such as "you sure are moving slow today, but then you are getting pretty old" or "well, that is what happens when you get old. Your memory goes first."  On Rogers' birthday, she was told, "you sure are getting on up there."

48.   Able subjected Rogers to disparate treatment by refusing to allow her to work remotely during periods of 2020. Upon information and belief, Able had allowed a younger employee to work remotely during 2019 when that employee required back surgery.

49.   Able subjected Rogers to disparate treatment by firing her. However, Able did not fire the younger Sales Coordinator in the Grapevine office with less experience with  Able than Rogers and who had been trained by Rogers.

50.   Upon information and belief, Able hired another Sales Coordinator for the Grapevine office shortly after Rogers was terminated who was younger than Rogers.

51.   Able discriminated against Rogers in the terms and conditions of her employment and subjected her to disparate treatment as compared to other  employees because of her age in violation of Texas Labor Code § 21.051 and § 21.125.

52.   Able discriminated against Rogers and terminated Rogers because of her age in violation of Texas Labor Code Chapter 21.051 and 21.125.

53.   Able's violations of Texas Labor Code Ch. 21 damaged Rogers. Rogers seeks to recover all legal and equitable relief to which she is entitled because of the discriminatory actions of Able in violation of Texas Labor Code § 21.051 and § 21.125.

54.   Rogers seeks to recover her back pay, front pay, compensatory damages for emotional distress and intangible harms and losses, the value of her lost employment benefits, the equitable remedy of reinstatement, front-pay, pre-judgment and post-judgment interest and her reasonable attorney's fees and costs.

### ADEA and Texas Labor Code Chapter 21 Retaliation Claims

55.   Rogers incorporates the preceding paragraphs as if restated.

56.   Able is an "employer" as defined by 42 U.S.C. § 2000e(b), 29 U.S.C. § 630,  and Tex. Labor Code § 21.002(8).

57.   Rogers is an employee as defined by 42 U.S.C. § 2000e(f), 29 U.S.C. § 630(f),  and Tex. Labor Code § 21.002(7).

58.   Rogers was qualified to perform the job duties at Able.

59. During her employment, Rogers engaged in activity protected by the ADEA and Texas Labor Code Chapter 21.

60. During her employment, Rogers objected to being called ageist names by Able employees. Rogers objected to being called "old lady." In doing so, Rogers engaged in activity protected by the ADEA and Texas Labor Code Chapter 21.

61. Able, through its employees, knew of Rogers' objections to the ageist comments made about her.

62. Within just months after Rogers engaged in activity protected by law, Able fired Rogers.

63. Able's stated reason for firing Rogers is not the real reason it fired Rogers and is just a pretext for retaliation.

64. Able knew of Rogers protected conduct and her objections to being called "old lady" and the other ageist comments made to her.

65. Able would not have terminated Rogers when it did so but for Rogers' protected conduct,.

66. Able's action in firing Rogers is an adverse employment action under the ADEA and Texas Labor Code Chapter 21.

67. Able's retaliatory actions were taken with malice and/or a reckless disregard for Rogers rights.

68. Able's retaliatory actions have damaged Rogers.

69.   Rogers seeks to recover the damages to which she is entitled for Able's violation of the ADEA and Texas Labor Code Chapter 21, including the recovery of her back pay, front pay, compensatory damages under Texas Labor Code Chapter 21, liquidated damages under the ADEA, the equitable right of reinstatement or front pay, fringe benefits, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs.

### Disability Discrimination under ADAAA

70.   Rogers incorporates the preceding paragraphs as if restated.

71.   Able is an "employer" as defined by the ADAAA. 42 U.S.C. § 12111(5).

72.   Rogers is an "employee" as defined by the ADAAA. 42 U.S.C. § 12111(4). Rogers was qualified to perform her job duties as Sales Coordinator for Able with or without a reasonable accommodation.

73.   Rogers suffers from several disabilities including COPD, diabetes, rheumatoid arthritis and heart disease. The disorders are disabilities as defined by the ADAAA. These conditions are physical impairments that substantially limit one or more major life activities. For example, COPD limits Rogers in the major life activity of breathing and the normal functioning of her respiratory system. Diabetes limits Rogers in the operation and normal functioning of endocrine system. Rheumatoid arthritis limits Rogers in the normal functioning of her immune system and in the major life activities of performing manual tasks, walking, and standing. Rogers' heart disease limits Rogers in the normal

functioning of her circulatory system and in the major life activities of performing manual tasks, walking, standing and breathing. *See* 42 U.S.C. § 12102(1) and (2)(A) and (B).

74.   In 2020, Rogers suffered from a serious issue related to spinal stenosis. This was a disability under the ADA because it substantially interfered with Rogers' ability to perform manual tasks and walking, standing, lifting or bending or sitting for extended periods of time. 42 U.S.C. § 12102(2)(A).

75.   In 2020, Rogers also suffered a serious case of COVID-19 that lasted for months. This serious case of COVID-19 was a disability under the ADA because it substantially interfered with a major life activity including breathing and the operations of a major bodily function including her respiratory function. 42 U.S.C. § 12012(2)(A) and (B).

76.   Rogers has a record of a disability and  was also regarded as having an impairment under the ADAAA. 42 U.S.C. § 12102(3).

77.   Despite these disabilities, Rogers was a qualified employee and performed her job duties with and without reasonable accommodations.

78.   In 2020, Rogers requested several reasonable accommodations as it related to the performance of her job duties.

79.   Rogers requested the ability to work remotely on several occasions. While Able allowed Rogers to work remotely at the very beginning of the COVID-19 pandemic, it refused to allow Rogers to work remotely after May 2020. It refused to allow Rogers to

work remotely during the time period where she required treatment for her spinal stenosis between July 2020 and the beginning of September.

80.   Able refused to allow Rogers to return to work on a part-time basis at the end of her COVID-19 leave as she requested. Able denied Rogers that reasonable accommodation.

81.   Able subjected Rogers to differing terms and conditions of employment than that of other employees because Able has allowed other employees with disabling conditions to work remotely in the past. For example, in 2019, an accountant for the company required back surgery and was out of the office from July 2019 until December 2019. Upon information and belief, that employee was allowed to work remotely. That employee is also much younger than Ms. Rogers.

82.   Able discriminated against Rogers in violation of the ADAAA in the terms and conditions of her employment because of her disability, her record of a disability and because Able regarded Rogers as disabled.

83.   Able refused to grant Rogers the accommodation of working remotely. Though Able granted Rogers' medical leaves of absence in 2020, Able held those accommodations against Rogers. Able used those accommodations, including the reasonable accommodation of short term leaves of absence due to a disability as a negative factor when evaluating Rogers and in terminating Rogers.

84.   Able violated the ADAAA by discriminating against Rogers and terminating her because she requested and used reasonable accommodations in 2020. Able violated the ADAAA by discriminating against Rogers by denying her the reasonable accommodation of working remotely.

85.   Able violated the ADAAA by firing Rogers because of her disability, her record of a disability and because Able regarded Rogers as disabled.

86.   Able's violations of the ADAAA damaged Rogers. Able caused Rogers to lose her income and benefits when it fired her in violation of the ADAAA.

87.   Rogers seeks to recover all damages to which she is entitled for Able's violation of the ADAAA, including the recovery of her back pay, fringe benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest, attorney's fees and costs.

## Disability Discrimination under Texas Labor Code Ch. 21

88.   Rogers incorporates the preceding paragraphs as if restated.

89.   Able is an "employer" as defined by Tex. Labor Code § 21.002(8).

90.   Rogers is an "employee" as defined by Texas Labor Code § 21.002(7). Rogers was qualified to perform her job duties.

91.   Rogers suffers from several disabilities including COPD, diabetes, rheumatoid arthritis and heart disease. The disorders are disabilities as defined by Chapter 21. These conditions are physical impairments that substantially limit one or more major life

activities. For example, COPD limits Rogers in the major life activity of breathing and the normal functioning of her respiratory system. Diabetes limits Rogers in the operation and normal functioning of endocrine system. Rheumatoid arthritis limits Rogers in the normal functioning of her immune system and in the major life activities of performing manual tasks, walking, and standing. Rogers' heart disease limits Rogers in the normal functioning of her circulatory system and in the major life activities of performing manual tasks, walking, standing and breathing.

92.   In 2020, Rogers suffered from a serious issue related to spinal stenosis. This was a disability under the ADA because it substantially interfered with Rogers' ability to perform manual tasks and walking, standing, lifting or bending or sitting for an extended period of time.

93.   In 2020, Rogers also suffered a serious case of COVID-19 that lasted for months. This serious case of COVID-19 was a disability under the ADA because it substantially interfered with a major life activity including breathing and the operations of a major bodily function including her respiratory function.

94.   Rogers was also regarded as having an impairment under Chapter 21.

95.   These conditions are disabilities as defined by Tex. Labor Code § 21.002(6) and (11-a) because they substantially interfere with the major life activity of walking, standing, working, breathing, sleeping and the normal functioning of Rogers's endocrine, circulatory, and respiratory system.

96. Despite these disabilities, Rogers was a qualified employee and performed her job duties with and without reasonable accommodations.

97. In 2020, Rogers requested several reasonable accommodations as it related to the performance of her job duties.

98. Rogers requested the ability to work remotely on several occasions. While Able allowed Rogers to work remotely at the very beginning of the COVID-19 pandemic, it refused to allow Rogers to work remotely after May 2020. It refused to allow Rogers to work remotely during the time period where she required treatment for her spinal stenosis between July 2020 and the beginning of September.

99. Able refused to allow Rogers to work part-time when she requested that accommodation at the end of her COVID-19 leave.

100. Able subjected Rogers to differing terms and conditions of employment than that of other employees because Able has allowed other employees with disabling conditions to work remotely in the past. For example, in 2019, an accountant for the company required back surgery and was out of the office from July 2019 until December 2019. Upon information and belief, that employee was allowed to work remotely. That employee is also much younger than Ms. Rogers.

101. Able violated Texas Labor Code Ch. 21 by discriminating against Rogers and terminating her because she requested and used reasonable accommodations in 2020.

Able discriminated against Rogers by denying her the reasonable accommodation of working remotely.

102.  Able discriminated against Rogers in violation of Texas Labor Code §21.051 in the terms and conditions of her employment because of her disability, her record of a disability and because Able regarded Rogers as disabled.

103.  Able violated Texas Labor Code § 21.051 by firing Rogers because of her disability, her record of a disability and because Able regarded Rogers as disabled. Able also violated Tex. Labor Code §21.051 by terminating Rogers because she used accommodations in 2020. Able used Rogers request for and receipt of accommodations, including short term leaves of absences, as a negative factor when it decided to terminate her.

104. Able's violations of Texas Labor Code § 21.051 damaged Rogers. Able caused Rogers to lose her income and benefits when it fired her in violation of Texas Labor Code § 21.051.

105. Rogers seeks to recover damages to which she is entitled for Able's violation of Texas Labor Code § 21.051, including the recovery of her back pay, fringe benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest, attorney's fees and costs.

### ADAAA and Texas Labor Code Chapter 21 Retaliation Claims

106.  Rogers incorporates the preceding paragraphs as if restated.

107. Rogers engaged in protected activity by formally making  requests for reasonable accommodation multiple times. Rogers was  denied some requests for accommodation.

108.  Able retaliated against Rogers in violation of 42 U.S.C. § 12203 and Texas Labor Code §21.055.

109.  Able justified its termination of Rogers because of the numbers of days she missed in 2020 due to her disabilities and the accommodations granted to her in short term medical leaves of absence.

110. Able retaliated against Rogers by firing her because of her protected activity by requesting  and using reasonable accommodations in 2020.

111. Able caused Rogers to suffer damages because of its illegal retaliation in violation of 42 U.S.C. § 12203 and Texas Labor Code §21.055.

112.  Able's retaliation damaged Rogers. Rogers lost her income and benefits because of Able's illegal retaliation against her.

113. Rogers seeks to recover the damages to which she is entitled because of Able's retaliatory actions against her, including back pay, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest, and reasonable and necessary attorneys' fees and costs of court.

## FFCRA  Emergency Paid Sick Leave Retaliation

114.  Able is an employer under the FFCRA.

115. After contracting COVID-19, Rogers sought leave under the FFCRA to recover from her serious case of COVID-19. Able paid Rogers for the first two weeks of her COVID-19 related absence under the provisions of the FFCRA Emergency Paid Sick Leave.

116. Able then placed Rogers on unpaid medical leave from October 12, 2020 through her return to work on December 28, 2020 as she recovered from COVID-19.

117. Able terminated Rogers just three months after she received emergency paid sick leave under the provisions of the FFCRA.

118. Able retaliated against Rogers by terminating her for her use of FFCRA emergency paid sick leave.

119. Under Section 5104 of the FFCRA, it is unlawful for an employer to discharge, discipline or in any other manner discriminate against an employee who has taken Emergency Paid Sick Leave. 29 C.F.R. § 826.150(a).

120. Able violated the FFCRA by terminating Rogers for her use of and receipt of emergency paid sick leave under the FFCRA.

121. Able's violation of the FFCRA damaged Rogers. Rogers seeks to recover her actual and liquidated damages and attorney's fees and costs of litigation as allowed by 29 C.F.R. § 826.150(b).

## Jury Trial

122. Rogers demands a trial by jury.

## **Prayer**

WHEREFORE, Plaintiff Cynthia Rogers prays this Court enter a judgment for

Rogers and against Able Moving, LLC d/b/a Able Machinery Movers, LLC on all

claims asserted against it and for such other and further relief to which Plaintiff is just

entitled.

Respectfully submitted,

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
Fitzgerald Law, PLLC
8150 N. Central Expy, 10th Floor
Dallas TX 75206
214.265.9958 (direct dial)
(214) 367-6001 (fax)
karen@fitzgerald.law

Attorney for Plaintiff Cynthia Rogers